UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

PAOLA CABEZOLA-PEREZ, on
behalf of herself and others similarly situated,

Plaintiff, CASE NO. 1:25-cv-24774

v.

SCHNEIDER ELECTRIC USA, INC.,

Defendant.
________________________________________/

**COLLECTIVE ACTION COMPLAINT**

Plaintiff, Paola Cabezola-Perez ("Plaintiff"), on behalf of herself and other similarly situated employees, by and through her undersigned counsel, files this Complaint against Defendant, Schneider Electric USA, Inc. ("Defendant"), and states as follows:

**JURISDICTION AND VENUE**

1. These claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. § 201 *et seq.*) (the "FLSA"), for retaliation and to recover unpaid overtime wages, an additional equal amount as liquidated damages, obtain declaratory relief, and reasonable attorneys' fees and costs.

2. This Court has jurisdiction over this action because this action arises under federal law.

3. Venue is proper in this judicial district pursuant to because the events giving rise to this claim occurred in this district, and Defendant resides and does business here.

**PARTIES**

4. At all times material hereto, Plaintiff was, and continues to be a resident of Miami-Dade County, Florida.

5. At all times material hereto Defendant was a foreign profit corporation engaged in business in Florida, with a principle place of business in Boston, Massachusetts.

6. At all time material hereto, Plaintiff was "engaged in commerce" within the meaning of § 6 and § 7 of the FLSA.

7. At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of FLSA.

8. At all times material hereto, Defendant was an "employer" within the meaning of FLSA.

9. At all times material hereto, Defendant was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

10. At all times material hereto, Defendant was, and continues to be, an enterprise engaged in the "production of goods for commerce" within the meaning of the FLSA.

11. The annual gross revenue of Defendant was in excess of $500,000.00 per annum during the relevant time periods.

12. At all times hereto, Plaintiff was "engaged in commerce" and subject to individual coverage of the FLSA.

13. At all times hereto, Plaintiff was engaged in the "production of goods for commerce" and subject to the individual coverage of the FLSA.

14. The additional persons who may become plaintiffs in this action are/were employees of Defendant, who held similar positions to Plaintiff, and who worked in excess of forty (40)

hours during one or more work weeks during the relevant time periods but who did not receive pay at one-half times their regular rate for their hours worked in excess of forty (40) hours.

## FACTUAL ALLEGATIONS

15. Plaintiff has worked for Defendant since on or about January 24, 2005.

16. At all times during her employment, Plaintiff has been a salaried, non-exempt employee, meaning that she was paid a salary, but also entitled to pay at a rate of one-half times her regular rate for all hours worked in excess of forty (40) hours in a single work week ("overtime hours").

17. Because of the requirements of Plaintiff's job, all of the employees on her team have to work some amount of overtime.

18. Prior to December 2024, Defendant generally paid Plaintiff for the overtime hours she worked.

19. However, beginning in December 2024, when Plaintiff began being supervised by Brenda Trespalacios Argain ("Ms. Trespalacios Argain").

20. Immediately upon taking over as manager, Ms. Trespalacios Argain informed the employees on her team that she did not care what Defendant's policy was regarding overtime, she was not going to allow any employees to work any amount of overtime. Then, when employees did work overtime and informed her about it, Ms. Trespalacios Argain did not allow those employees to enter those hours in Defendant's timekeeping system and threatened to discipline employees that did enter such time in the system.

21. Thus, since Ms. Trespalacios Argain began managing Plaintiff, the Company has not paid Plaintiff at a rate of one-half times her regular rate for any overtime hours worked.

22. Because Plaintiff knew that she and other employees were entitled to pay at a rate of one-half times her regular rate for all overtime hours worked, she complained to Ms. Trespalacios Argain about her actions.

23. On Thursday, August 21, 2025, Plaintiff complained about the retaliation she was receiving to Shontera Gillespie Coleman ("Ms. Gillespie Coleman") in Defendant's Human Resources department. During that conversation, which lasted for over an hour, Plaintiff also complained about not being paid for the overtime hours she worked, and made it clear that:

a. She was a salaried non-exempt employee, which entitled her to overtime pay for all hours worked over 40 in a week.

b. Ms. Trespalacios Argain has engaged in a campaign of harassing and retaliatory conduct towards her (and others), including constant emails and messages that served no purpose other than to create an abusive and hostile work environment;

c. Her anxiety and mental health had worsened as a direct result of the way in which Ms. Trespalacios Argain had treated her, and because every action Plaintiff had taken, including complaining about not being paid overtime, immediately led to retaliation by Ms. Trespalacios Argain;

d. She feared being terminated for no reason; and

e. She believed she was being targeted following her February TalentLink review and after raising concerns about unpaid overtime.

24. Also on August 21, 2025, Plaintiff messaged another Human Resources Manager, Jennifer Marshall ("Ms. Marshall") via Defendant's Microsoft Teams platform. Ms. Marshall stated that she would contact Plaintiff on Friday, August 22, 2025, but she did not.

25. On Monday, August 25th, 2025, only four (4) days after Plaintiff complained about Ms. Trespalacios Argain to HR, Plaintiff joined a call with Ms. Trespalacios Argain with the intent of obtaining clarification from her on what her expectations were for certain specific tasks, so that any such issues could be resolved in a professional and collaborative manner. Instead of engaging in a discussion with Plaintiff, Ms. Trespalacios Argain abruptly informed her that she was being placed on a performance improvement plan ("PIP").

26. At the time, Plaintiff had worked for Defendant for roughly 21 years and had never been placed on a PIP.

27. Immediately after her call with Ms. Trespalacios Argain, Plaintiff once again reached out to both Ms. Gillespie Coleman and Ms. Marshall. While Plaintiff did not receive any response from Ms. Marshall, Ms. Gillespie Coleman did respond later that day and, during their call, Ms. Gillespie Coleman told Plaintiff to simply "follow the PIP and do [her] best," completely ignoring Plaintiff's overtime concerns, providing no support regarding the harassment she reported only a few days prior.

28. Instead of addressing the harassment and retaliation Plaintiff was receiving, as required, Ms. Gillespie Coleman advised Plaintiff to seek assistance through Spring Health or a therapist, further minimizing the fact that Ms. Trespalacios Argain was actively engaging in conduct that was both illegal and violated Defendant's own policies. While Ms. Gillespie Coleman promised follow-up later that day to continue the conversation, she did not.

29. After I received her PIP and speaking with Ms. Gillespie Coleman, Plaintiff began preparing a written response that outlined some of the reasons why she disagreed with receiving the PIP. Of course, instead of considering her position and answering the simple requests for direction and information she asked for in her response, Ms. Trespalacios Argain

once again retaliated again Plaintiff for speaking out by issuing her a "revised" PIP that included a significant amount of additional information that was not included in the original PIP Plaintiff had been given only a day prior.

30. On August 26, 2025, Plaintiff followed about all of her concerns in an email to Defendant's Human Resources Department.

31. In her August 26, 2025 email, Plaintiff requested that HR remedy her situation by:

a. Paying her for all overtime hours worked dating back to November 2024 (for herself, and all other employees on her team);

b. Formally investigating the retaliatory and harassing conduct of Ms. Trespalacios Argain;

c. Immediately transfering Plaintiff out of the Project Coordination team so that she could continue her career with Defendant without ongoing retaliation (or, alternatively, that Ms. Trespalacio Argain be removed from her team); and

d. A written response from HR or legal outlining clear next steps and timelines for resolution.

32. Defendant claims to have conducted an investigation into Plaintiff's allegations and, not surprisingly, cleared itself and its management team of any wrongdoing.

33. Defendant also refused to transfer Plaintiff or Ms. Trespalacios Argain, thereby leaving Plaintiff even more vulnerable to retaliation, particularly since Ms. Trespalacios Argain had been made aware of all of Plaintiff's complaints about harassment and retaliation to HR.

34. Notwithstanding, Defendant did agree to review Plaintiff's claim for overtime, and asked Plaintiff to provide it with a calculation of how many hours of overtime she had worked that had not been paid.

35. Despite Plaintiff timely complying with Defendant's request for a calculation of all of the unpaid overtime hours she worked, Defendant has failed to compensate Plaintiff, and those similarly situated, at a rate of one-half times Plaintiff's regular rate for all hours worked in excess of forty (40) hours in a single work week.

36. Under the FLSA, Plaintiff, and those similarly situated to her, should be, and were required to be, properly compensated at the rate of one and one-half times Plaintiff's regular rate for those hours that Plaintiff worked in excess of forty (40) hours per week.

37. Defendant has violated 29 U.S.C. §207 since December 2024, and continuing to date, in that:

a. Plaintiff and other similarly situated employees worked in excess of forty (40) hours per week for the period of employment with Defendant;

b. No payments, and provisions for payment, have been made by Defendant to properly compensate Plaintiff at the statutory rate of one and one-half times Plaintiff's regular rate for those hours worked in excess of forty (40) hours per work week as provided by the FLSA.

38. Defendant violated 29 U.S.C. §215 by retaliating against Plaintiff by placing her on a PIP shortly after she complained about not being paid overtime, which was the first time that Plaintiff had been placed on a PIP during her 21-year career with Defendant.

39. Plaintiff has hired Ruiz Trial Law, PLLC to represent her with respect to this matter, and has agreed to pay the firm a reasonable fee for its services.

## COUNT I – FAILURE TO PAY OVERTIME UNDER THE FLSA

40. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 39 of the Complaint as if fully set forth herein.

41. Defendant failed and refused to pay Plaintiff an overtime rate of one and one-half times her regular hourly rate for all the overtime hours she worked beyond 40 hours in a workweek as a non-exempt hourly employee, in violation of the FLSA.

42. Defendant engaged in a pattern and practice of willfully and intentionally refusing to pay Plaintiff and other employees similarly situated to her overtime wages of one and one-half times their regular hourly rate(s) of pay for the overtime hours worked as non-exempt hourly employees during the past three years.

43. Defendant either knew or recklessly failed to investigate whether its failure to pay Plaintiff overtime wages of one and one-half times her regular hourly rate(s) of pay as a salaried non-exempt employee violated the FLSA, and then failed to timely correct its violations.

44. Defendant's actions were willful and/or showed reckless disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiff at the statutory rate of one and one-half times Plaintiff's regular rate of pay for the hours worked in excess of forty (40) hours per week when it knew, or should have known, such was, and is due.

45. At all times material hereto, Defendant failed to comply with Title 29 and United States Department of Labor Regulations, 29 C.F.R. §§516.2 and 516.4, with respect to those employees similarly situated to the named Plaintiff by virtue of the management policy, plan, or decision that intentionally provided for employees to not be compensated at the statutory rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a given week.

46. Based upon information and belief, the employees and former employees of Defendants similarly situated to Plaintiff were not paid proper overtime wages at one and one-half their regular rate of pay for all hours worked in excess of forty (40) hours in a given week.

47. Plaintiff (and all others similarly situated) is entitled to a back pay award of overtime wages for all hours worked beyond 40 hours in a workweek as a non-exempt employee, an equal amount as liquidated damages, and all of her attorneys' fees and costs.

## COUNT II - FLSA RETALIATION

48. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 39 of the Complaint as if fully set forth herein.

49. The FLSA's anti-retaliation provision makes it unlawful for an employer to retaliate against an employee because such employee has filed complained about a violation of the FLSA.

50. Plaintiff engaged in protected activity under the FLSA by making complaints regarding Defendant's failure to pay her (and other employees) for all overtime hours worked.

51. Defendant retaliated against Plaintiff for engaging in protected activity by placing her on a PIP, which caused Plaintiff harm.

52. Defendant's actions were willful and in reckless disregard of the FLSA.

53. As a result of Defendant's unlawful conduct, Plaintiff is entitled to damages including, but not limited to, back pay, front pay, emotional distress, liquidated damages, attorneys' fees, costs, and other relief the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, Paola Cabezola-Perez, respectfully requests that judgement be entered in her favor against Defendant;

a. Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour provisions of the FLSA;

b. Awarding Plaintiff overtime compensation in the amount due to her for the time she worked in excess of forty (40) hours per work week;

c. Awarding Plaintiff liquidated damages in an amount equal to the overtime award;

d. Awarding Plaintiff reasonable attorneys' fees, and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

e. Awarding Plaintiff back pay, front pay, emotional distress damages, liquidated damages, and attorneys' fees and costs in connection with her claim for FLSA retaliation;

f. Awarding Plaintiff prejudgment interest; and

g. Ordering such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable in Plaintiff's Complaint.

Dated: October 16, 2025

**RUIZ TRIAL LAW, PLLC**

/s/ *Fabian A. Ruiz*
Fabian A. Ruiz
Fla. Bar No. 117928
fabian@ruiztriallaw.com
9100 S Dadeland Blvd., Suite 1500
Miami, FL 33156
Tel: (866) 784-9247
Fax: (866) 487-2599
*Counsel for Plaintiff*